All right, we'll call our next case, which is M.R.etal.V.Ridley School District. And is it Mr. Yadfin? Good morning, your honor. Am I pronouncing your name correctly? Yes, sir. Get yourself set up. Good morning, your honor. May it please the court, my name is Alan Yadfin, a law firm of Popper and Yadfin, and I represent the appellants M.R., J.R., and their daughter, E.R. With the court's permission, I would reserve one, I'm sorry, three minutes for rebuttal. Very well. Thank you, your honor. $57,918.45, A-103. This is what a permanent material alteration of a legal relationship to plaintiff's benefit looks like. This is what makes a plaintiff, an appellant in this case, a prevailing party. Parents brought suit for the sole purpose of seeking reimbursement for the expenses that they were paying when Ridley School District refused to shoulder its burden under the pendant placement statute, or portion of the statute. And they paid the tuition at Benchmark, they paid to transport the child to Benchmark, they even paid the ESY that was in Ridley's last IEP before the hearing officer's decision changed Benchmark to the pendant placement. Mr. Yadfin, the check for $1,100 in John T., on the contempt order there, enforcing the preliminary injunction, which we described as akin to a statehood order, was not sufficient to allow for prevailing party status. What makes this different? What makes it different, your honor, is that arose under a contempt order. The question of a contempt order is to enforce the court's authority over the litigants. That's not what this was about. The IDEA provides that children shall receive a free and appropriate public education. And this court, in Sesquenita v. Ray Lee, has said that the statehood or pendant placement provisions is part of the IDEA's effort to enforce that free and appropriate public education. That makes it different, I think, from the contempt order in J.O. And also, I'm sorry. Haven't we already crossed that bridge with both John T. and J.O.? Haven't we, for better or worse, already decided that if what we're talking about is a traditional statehood prospective decision about the interim status, pending a determination on the merits of the IDEA claim, that succeeding as to that statehood status is not going to convey prevailing party attorney's fees? The magic word, I think, is prospective. This was not prospective relief at the point where the district court entered judgment. This court had decided, Ridley 1, that the amounts were fixed, the amounts were known, and actual judgment on the complaint, raising the amounts due, were fixed and locked. Parent had expended them. Ridley had an obligation to have expended them and failed to do so. And this court concluded that in failing to do so, they violated the IDEA. So I think that to say that the ship has sailed on J.O. and John T. is perhaps a bridge too far. That those cases came up during the point of the due process proceedings, very early in the proceedings, they arose in the context in J.O. of the school district seeking to change a placement and filing a for-due process, the parent opposing it, and very quickly within a matter of days, that was resolved and the parties settled the litigation. What public policy considerations of A should we take into account? As I understand this case, Ridley refused to reimburse the parents and that spawned this litigation. If we were to rule for Ridley, what public policy considerations should we take into consideration? Your Honor, the problem with this case, saying that it falls into this, if it's state put, there's no fees, no prevailing party, is it encourages the bad behavior we saw in this case. April 21st, 2009, there was an agreement created by the due process hearing officer's order. Ridley had responsibility from that point on to start paying the tuition and related services at Benchmark and the transportation. They didn't. When they were requested to do so in March of 2011, I believe, they said no, forget it. We had to file this suit. We filed this suit. The district court ruled in favor and the school district appealed as is their right to do. Then in Ridley 2, this court said that the school district was obligated to all those expenses that the parents had incurred during the period of the Ridley 1 litigation after the hearing officer's decision. The school district then appealed or filed a cert petition to the Supreme Court only on one issue having to do with a third of the amount they owed. Did they pay the other two-thirds? No. Did they pay the costs that this court ordered in its mandate in Ridley 2? No. They filed for cert. The case continued for another year and I've linked in my brief and it's also in the district court record linked to Mr. Riley advising the school district that we've got free pro bono counsel. We're not going to be liable for fees. We're going to keep appealing this case. It encourages the behavior of the school district to protract this litigation. It wasn't until the Supreme Court denied cert that the school district finally paid the judgment entered by the district court on October 1st, 2012 with interest, with accrued interest. That's the definition of a judgment in favor of the plaintiffs, I would submit. But didn't we say expressly in John Teeney that public policies are not a reason to change the definition of prevailing party under the IDEA? The court has generally in John T and generally spoken about attorney's fees and they're not punitive in nature. They're meant to allow parties who would otherwise not have the resources to do the litigation. So I understand the point the court is making, but when you're considering how something as key as state put will be handled by the courts, again going back to Sesquenita versus Riley, this court said that state put is an issue in almost every IDEA case. If a parent believes that their child is not getting an appropriate education, they file for due process, the child remains in the last placement that the school district provided. If the school district, as in J.O., believes that the placement should be changed, then the child remains in their last placement and the school district doesn't get to change it. So in that sense it sort of has a balance to it. Help us understand, you seem to be saying that the difference here and what separates this from a case law saying that the litigation decision as to prospective relief would not convey prevailing party status, that the hearing officer has already made a pronouncement. Yes. If all the hearing officer is pronouncing is an existing right and the state put right is one that consists of both placement and decision about services, but also concomitant to that, who is going to pay for them, then whether it's at the time that the hearing officer makes that pronouncement or in enforcement afterwards, aren't we talking about the same set of prospective rights? But that is, how do we distinguish this, even with the hearing officer's pronouncement, from John T. saying that the after-the-fact enforcement won't be sufficient to convey prevailing party status unless it is applying to some underlying relief that itself would have been sufficient for prevailing party status? Obviously, it's a slippery slope as to where you draw the line. But if the school district had assumed its responsibility at that point on April 21st or reasonably thereafter or after a letter was sent to them in April of 2009, then it is, as Mr. Riley has described, just an automatic right that has been created. But it's the failure to assume that obligation. The hearing officer's decision created the obligation. But the failure to assume it, forcing parents to have to compel it, to have to seek the court's aid in compelling compliance, is what makes it different than merely a, all right, I'm filing for due process and I want my child to stay put. Or the hearing officer has ruled in my favor so the child stays put. That is different in terms of the outcome for the parents, in terms of the significance for the case. And I turn to the court's question in the letter last week regarding Burlington and as to whether this case is really for reimbursement under Burlington. And I think that that is a sound way to view it. Again, and I keep going back to Susquenita, the court said that Burlington does not have to be read only within its procedural context. That the rule that a court has the ability to fashion the appropriate relief in an IDEA case is one that applies beyond just the pure Burlington fact situation. And there in Ray Lee, they expanded it. And they also talked about how stay put is part of the FAPE obligation of the IDEA. And in fact, I even quoted that in the complaint that I filed in this, that specific language. Is the holding that you're asking for then one limited to separate actions, separate complaints and separate actions that are brought for enforcement? Again, how otherwise do you distinguish attorney's fees that would be involved in filing a motion for contempt sanctions for enforcement purposes? Well, I keep going back to that contempt is not under the IDEA. Contempt is enforcing the authority of the court. So I understand what was said in John T. And I still think that in light of your question, there's a distinction. Where in the context of this case, I think you can decide it on the narrow facts and narrow circumstances we have here. Where because of the circumstances, there was a separate action filed, which the court in Ridley too said that they are separate and distinct inquiries. And that was why they didn't dismiss on collateral estoppel or other grounds. That where there's a separate action such as here, where there's a judgment rendered by the court, a monetary judgment rendered, then that is a basis on which this court can find that the parents are the prevailing party. Now, if you're asking me the broader question for setting policy, I'm willing to answer that. But I think it's beyond the scope of this case where there was this factual scenario and this procedural posture. We had asked you in advance and you've touched on it. But I'd like to understand a little more fully your answer about whether we ought to be thinking about this case as an action for reimbursement that arises under a right recognized in a different part of the IDEA as 1412 as opposed to 1415. What's your answer to that? What do we make of the right that is recognized in 1412? And what significance does it have when we're in the context of that interim period of the statehood? 1412 section A10C2 codified Burlington. But I think Burlington stands on its own in terms of the court has very broad power to fashion the appropriate relief under the IDEA where there's been a violation. So I think that this case can properly be viewed as a suit for tuition under Burlington and that the 1415 I2C3 analysis allows this court to take Burlington as it's been interpreted by the court in Ray Lee and treat this as a tuition reimbursement claim which is different from yes, this child will stay in that program until there's been a manifestation determination hearing or until a hearing officer has decided whether that additional program is appropriate or withdraw that program is appropriate. That's different than this sort of case where we're talking about parent has been determined to be entitled to have the child in this school with this tuition paid with the other related services paid. The court also asked me to consider Hart and Gross.  I don't think that's necessary. The only thing I would point out that I thought was interesting was that in, I have to say, that request kept me up several nights in the last week. But the one relevant thing that I did look at the United States Solicitor General's amicus brief in Hart trying to figure out what was important to the court. That brief incidentally was filed by Ridley's attorney on cert who at the time was an assistant solicitor general. He wrote, the court's analysis in Buchanan suggests that when the court determines that the defendant acted unlawfully and the court retains jurisdiction to ensure compliance, the plaintiff has prevailed in the relevant sense. Referring to footnote nine. I think that's what we have here. I think that this case falls within Buchanan and I think that the analysis in J.O. and John T. under those factual scenarios are not inconsistent with a broader interpretation of Buchanan where there's actually been a determination, in that case the determination of unlawfulness that it was improper to not honor the statehood and that the court retained jurisdiction by enforcing that violation and entering judgment on that. So I think Buchanan actually stands for that proposition. Thank you very much. Thank you, your honor. Francis Zadier, I take it is? Yes, your honor. Mr. Riley? May it please the court, John Riley on behalf of the Ridley School District. The school district acknowledges that there was a judgment in this case. However, under Buchanan, for a party to obtain prevailing party attorney's fees, the judgment has to be on the merits. And this case can be resolved by reference to this court's opinion in Ridley 2, which determined, which said resolution of the pendant placement and tuition reimbursement, in this case under state put, is completely separate from the merits issues which focus on the adequacy of the proposed IEP. So I suggest to this court that it has already resolved the question of whether this was a judgment on the merits. It is not a judgment on the merits because it is under 1415J, the state put provision. Go ahead. Isn't that just to say, the fact that it is separate from the underlying merits is just to say that there were different merits that were being litigated as to the enforcement of the reimbursement portion of the order. Why doesn't that suggest we should view this as a stand-alone litigation dealing with different merits, particular defenses that Riley was raising along the way that weren't pertinent to the underlying IDEA litigation itself? No, I respectfully disagree, your honor. The merits of this case were disposed of in Ridley 1. The merits of an IDEA case are addressed in the due process complaint procedure, which begins with a complaint that outlines the issues that the parent is raising, what's wrong with the identification, evaluation, placement of the child, the child's IEP. They're adjudicated by a hearing officer and then either party has the ability to come to court and get judicial review of those. The merits of this case were determined in Ridley 1. The parents went through that process, they obtained a favorable result from the hearing officer, however, that was reversed in district court and affirmed here. It seems to me maybe it proceeds in stages, though. Help me out on this. Is the issue, is the penultimate issue that the child is entitled to a free appropriate public education? Yes, your honor. And the subsidiary issue then is that during this period when the hearing officer makes a decision, the free appropriate public education is the private placement. The question of whether, well, let me put it this way, your honor. The state put provision, which is entitled maintenance of current educational placement, is itself unrelated to the merits of the claim. And as I said, this court has already held that in this case that the state put claim that was brought in this separate action is, as this court said, completely separate from the merits issues. It's completely separate because it's unconcerned with the merits at all. The state put provision states that during the pendency of proceedings, the child shall remain in the current educational placement until the proceedings are completed. The provision doesn't inquire into the merits at all. It doesn't inquire into whether the placement is appropriate. But doesn't it mean that it is appropriate? That in that interim period, that's the appropriate placement? No, there's no inquiry into whether it's appropriate or not. It's merely what is the current educational placement? Why would it be wrong for us to look at this as really a tuition reimbursement case under 1412? Because it's not. Because you've already found that it's not. Because in the first place, the parents brought a Burlington tuition reimbursement claim in Ridley 1. They filed a complaint. They went in front of a hearing officer. They obtained a favorable result there that was reversed here. They brought a Burlington claim. And that's exactly what the Burlington case was about. The Burlington case was about a district court's authority to grant tuition reimbursement for a violation of a free appropriate public education. But that only went so far in the underlying litigation. And the hearing officer ordered compensatory education for first grade, ordered tuition reimbursement for second grade, bringing it up to the present. The expectation was, given that there was an order in place, it functions as an agreement of the parties for the stay put period, that the school district would then abide by the order of the court. Going forward, when they haven't done that requiring additional litigation, why aren't we looking at a retrospective tuition reimbursement action? Because the plaintiffs in this case pleaded that it was 1415J that is stay put. And because the district court and this court found that they were entitled to relief under 1415J stay put, which is irrespective of the merits. As this court said in the Drinker case, the stay put operates regardless of the merits. Or, as you said in this case, completely separate from the merits. So the only question in the stay put case is, are there proceedings? Are the proceedings pending? And where is the child being educated? It doesn't matter whether the education is appropriate. It doesn't even matter, as in this case, whether it's being provided publicly, whether it's being provided in a public school. So stay put is completely separate from the merits. But the way you're reading merits and prevailing party status, if I'm understanding it correctly, would mean that no litigation whatsoever that relates to any aspect of stay put, whether an injunction if the school district has been ordered to provide services and then refuses to do so, or refuses to pay for services or tuition, or refuses to allow a child back into the school if that's been ordered, that there's no aspect whatsoever of stay put, prospective or retrospective, that would entitle parents to prevailing party status. That's correct, Your Honor. How do you reconcile that with our statement in jail where we said that parents who achieve favorable interim relief may be entitled to prevailing party attorney's fees as long as the interim relief granted derives from some determination on the merits? Because there may be some interim relief for which a parent could obtain attorney's fees that's based in some way on a determination on the merits. So interim relief on the merits, yes. Stay put is not on the merits. You found in J.O., you found in John T., found in Drinker, and determined in this case that stay put is not on the merits. It's really established beyond question at this point for more than 20 years. Could this interim relief be you've got to pay the tuition back? Well, I suppose if there was, if under Burlington, say a hearing officer or a court determined during the course of a merits proceeding, that is a due process complaint, judicial review of the due process complaint, that there was a violation on the merits and in some way the school district had denied the student a free appropriate public education, then perhaps, but not under the stay put statute as occurred here, Your Honor. So then from your perspective, when the court tells Ridley you've got to reimburse the parents, you don't really have to reimburse the parents unless lawyers get involved forcing Ridley to reimburse the parents. Is that your perspective? Oh, no. No, Your Honor. We, at the time, at the time this issue arose, at the time the stay put issue arose, the district court had already determined that Ridley had offered the student a free appropriate public education. And so Ridley asserted defenses in this case concerning rest judicata and counterclaim and whatnot. But doesn't that prove the point? That that is what we're talking about here is merit-based litigation. Unless we're going to assume that the school district had no defenses whatsoever to making that payment, if we assume the good faith of the school district, then what's being litigated for that interim period does relate to very different merits  No, I disagree, Your Honor. And this court has already determined, as I said, for 20 years, beginning back in Drinker and up to this case, that stay put is not merits litigation. The merits litigation here occurred in Ridley 1. The Burlington claim arose and was resolved in the school district's favor in Ridley 1. Stay put does not concern the merits. All it does is preserve the current educational placement during the pendency of the proceedings. We said in J.O., we specifically cited to Bagby v. Beal, one of our cases where we had held that a plaintiff was the prevailing party on a procedural due process claim because she succeeded in getting a hearing. She lost on the merits of that hearing, but because she succeeded in ensuring that procedural right, we said prevailing party status was appropriate. We then cited to that in J.O. in indicating circumstances where prevailing party status might be appropriate, where we're talking about stay put, which is literally under the heading of procedural rights under the IDEA. Why should we treat the enforcement of that right any differently? I can't speak to the Bagby case, Your Honor. I don't know that that result would survive analysis under Buchanan, which requires a judgment on the merits. It sounds to me as though merely achieving a hearing, but not one that results in a merits judgment, would result in fees. I don't think it would survive analysis under Soll v. Weiner as well, which says that a preliminary injunction  does not result in attorney's fees. If I could make one other suggestion to the court, is to consider the nature of stay put. Stay put is ancillary. It is dependent. It's completely dependent on a merits claim. There has to be a merits claim and a proceeding that's pending for stay put to be invoked. It's temporary. The stay put in this case was literally temporary. This court held that the parents were entitled to stay put from the time of the hearing officer's decision until the end of their appeal in Ridley 1. So it's temporary. It's not permanent. This seems like apples and oranges, though. We aren't talking about... When we're looking at retroactive reimbursement, when Ridley 1, the district court has already ruled at the point new litigation is filed. So we're not talking about relief that in any sense is temporary or even interim, pending some decision. The decision was already made as to the merits. We're talking about retroactive litigation that is looking to enforce a right enshrined in the hearing officer's order and the effect of that as an agreement at that point between the parties. Why isn't that... Going back to Judge Restrepo's question, I'm still struggling to understand how the district can view that as something other than merits-based litigation, something changing the relationship between the parties. Your Honor, I think the crucial distinction is that the stay put in this case was not enforcing the hearing officer's decision. The hearing officer's decision was reversed by the district court and that reversal was affirmed by this court. But the hearing officer's ruling put in place was an obligation for the school district to make payment of tuition up to the point of a final resolution, that is, in the Court of Appeals. Your Honor, I wouldn't say that it's the hearing officer's decision that created the obligation for the school district. It's the statute, the stay put statute, and the stay put statute does not require any determination on the merits. It required the hearing officer to make the determination that the private placement was the proper one for that period. Until that was finally resolved at the Court of Appeals, during that period, the IDEA, contingent on the hearing officer's ruling, as to where the child should be, gave rise to an obligation of the school district to make payment. When the school district doesn't make payment, that kind of retroactive litigation, enforcing the concomitant right to make payment for tuition, seems like a very different thing than traditional prospective stay put litigation. And you're putting them both under the same umbrella. The fact that it's retroactive doesn't change its nature. The nature of it is that it's unrelated to the merits. Stay put is unrelated to the merits. And as I said, you've already determined in this very case that stay put is completely separate from the merits. There was no merits determination that was necessary for the district court to put the stay put order in place and for this court to affirm it. Thank you very much. I think Your Honor is correct that Bagby does have some relevance. Ms. Bagby was a state employee. She was not given a due process hearing. The district court ordered that she be reinstated to that hearing. She went back. She had the hearing. That was the merits of her case, though, the denial of due process. No, but what she asked for was a hearing. And this court, in Bagby, determined when she ended up moving and didn't do what she wanted. She got what she wanted. She got what she wanted. She didn't win ultimately, but she prevailed on the merits question of whether there was a denial of due process. Exactly. And I think Mr. Riley is perhaps mistaken when he talks about Soll v. Weiner. That was a case where the court said that the plaintiff was not a prevailing party because it was a transient victory at the threshold of an action. The initial success was undone and the plaintiff leaves the courthouse empty-handed. M.R. and J.R. did not leave the courthouse empty-handed. Let me suggest a way that you can unwind Mr. Riley's analysis of the merits, that there are two separate merits actions. I could have, in March of 2012, instead of filing this separate case, I could have filed for due process in front of the Pennsylvania due process hearing officer on the state put, saying that there was a violation. Hearing officer could have rendered a decision in my favor. Ridley could have appealed it. We would have been in front of the district court. The district court would have ruled against it. Everything else could have happened the same way. It's the merits of the state put as distinct from the merits of the initial Ridley 1 claims. Merits does not mean there's only one set of merits in the case forever. Here we have two separate parallel tracks. I didn't have to pursue due process. There's no exhaustion requirement. Murphy v. Arlington, the Second Circuit case, and I think there's law in this circuit that doesn't come to mind. But the point is that I did not have to... In any cases that Mr. Riley's incorrect, that the merits decision was decided. Merits was decided as to whether the school district denied FAPE in 2007 and 2008. It was not decided as to whether they denied FAPE following April 21st, 2009. Thank you. If the court has no further questions... Thank you very much. Thank you, Your Honor. The case was well argued. We'll take the matter under advice.